UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARVIN STANLEY REAVES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. 2:13-CV-0678-SLB |
| | ) |
| **MORRIS-SHEA BRIDGE COMPANY, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiff's Motion for Partial Summary Judgment, (doc. 29);[1] defendant's Motion for Summary Judgment, (doc. 32); and defendant's Motion for Partial Summary Judgment on the Scope of Backpay Period, (doc. 36.)  Plaintiff Marvin Stanley Reaves has sued his former employer, defendant Morris-Shea Bridge Company, alleging that defendant terminated him and/or refused to return him to an equivalent position in violation of the Family and Medical Leave Act ["FMLA"].  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 32), is due to be granted; the remaining motions, (docs. 29 and 36), will be denied as moot.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249.  "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 32.)

### A.  STATEMENT OF RELEVANT FACTS[2]

Defendant, Morris-Shea Bridge Company, is a "deep foundation contractor," whose work includes "foundation drilling, pile driving, [and] shoring." (Doc. 30-5 at 13-14.)  Its corporate office is located in Irondale, Alabama, a suburb of Birmingham; defendant seldom has field work in the Birmingham area. (*Id*. at 77-78; doc. 32-1 at 56.)  Defendant has 120-

---

[2]As required when determining a Motion for Summary Judgment, the court has construed the facts in the light most favorable to plaintiff, the non-moving party.  All disputed facts are resolved in his favor, and all reasonable inferences arising from those facts are drawn in his favor.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

150 employees nationwide, working in the corporate office, the equipment yard, and in the field. (Doc. 30-5 at 76.)

Defendant's superintendents work in the field on construction jobs for the company. (Doc. 32-6 ¶ 2.) Superintendents seldom, if ever, report to or work in the corporate office; "the actual site of the construction [job] is where . . . Superintendents . . . work overseeing and managing the day-to-day construction work of [defendant's] employees and coordinating with other companies also on site." (*Id.*)

Defendant employs workers at the construction site. (*Id.* ¶ 3.) For these workers, the job site is "their home base during a construction job and [they] report to the construction site daily for their work." (*Id.*) The superintendents give out work assignments at the job sites and they evaluate the employees based on their observations at the job site. (*Id.*) Decisions regarding hiring, disciplining, transferring, and terminating employees working in the field are made by the superintendent at the job site, with or without approval from the corporate office. (*Id.*; *see also* doc. 30-5 at 19 [corporate office involved with reassigning workers at the end of a job]; doc. 30-5 at 69 [corporate office approved raises based on recommendation of superintendent].) Most employees working the field, superintendents included, either travel directly to the other job site to report for work or may go home to their personal residence briefly before traveling directly to the new construction job site. (Doc. 32-6 ¶ 5.)

Plaintiff, Marvin Stanley "Stan" Reaves lives in Lincoln, Alabama. (Doc. 32-1 at 14.) He began working for defendant in July 2000 as a welder. (*Id.* at 113-14; doc. 32-2 at 4.)

He was promoted to foreman in 2001, and supervisor in 2008.  (Doc. 32-1 at 114-17; doc. 30-3 at 83-84.)  Lee Dubberly was plaintiff's superintendent.  (Doc. 32-4 at 15-16.)

Plaintiff was laid off in 2009.  (Doc. 32-1 at 122.)  A year later, in December 2010, Dubberly hired plaintiff as a foreman to work on a construction project in the area around New Orleans, Louisiana.  (*Id*. at 126-27; doc. 32-4 at 30-31.)  This project, to build gates in a flood wall around New Orleans, consisted of three jobs:  Job 935, "Bayou Dupre Sector Gate;"  Job 945, "Western Tie-In Structure;" and Job 948, "Hero Canal."  (Doc. 30-5 at 36-38, 40; doc. 32-1 at 130-32.)  Dubberly told plaintiff where to go to be ready for work.  (Doc. 32-4 at 31.)  Once he began working on the Louisiana jobs, plaintiff lived in his camper, which he was parked at a campsite about 15-20 miles from Job 935's job site; he did not drive home to Lincoln after work each day.  (Doc. 32-1 at 131-32.)  Although plaintiff worked at the three job sites around New Orleans, his camper "stayed in one spot."  (*Id*. at 132-33.)

Plaintiff testified that he was "a working supervisor" on these jobs.  (Doc. 32-1 at 130-32, 141.)  His work responsibilities included assigning work to the members of the pile-driving crew, conducting safety meetings with the crew, and performing pile-driving work.  (*Id*. at 140-41.)  This work was performed at the job site without communication with the corporate office.

5

For most of 2011, Dubberly supervised plaintiff.[3] (Doc. 32-1 at 143.) Dubberly gave plaintiff his job assignments on site or over the radio from his office in Violet, Louisiana, or from his car while traveling between job sties. (Doc. 32-1 at 146-47; doc. 32-4 at 14.) Plaintiff did not receive daily job assignments from the corporate office. (Doc. 32-1 at 148-49.) Plaintiff only "reported" to the corporate office for in Irondale, Alabama, for work-related reasons on three occasions: (1) he turned in paperwork to be reinstated in December 2010, (2) he was reinstated in April 2011 after being terminated for a safety violation, and (3) he requested medical leave on August 16, 2011.[4] (Doc. 32-1 at 127, 149, 152-54.) However, he "constantly" came to the corporate office in Irondale to ask for a raise. (Doc. 30-5 at 67-69.)

Defendant contends 25 employees were on the payroll of the Louisiana job sites on August 13, 2011. (Doc. 35 at 16 and nn.6-9.) On August 16, 2011, the day plaintiff requested medical leave, it contends it had 26 employees on payroll at the Louisiana job sites. (*Id.* at nn.10-13.) Plaintiff does not dispute these numbers. (Doc. 41 at 2.)

Plaintiff alleges, "Defendant employs more than 50 people within a 75 mile radius of its home office in Irondale, Alabama, when the nearby equipment yard (located in Wilsonville) is also included." (Doc. 41 at 4 [citing doc. 30-5 at 76-78].) He bases this

---

[3]For a few weeks, another superintendent, Keith Pate, supervised plaintiff. (Doc. 32-1 at 143.)

[4]Plaintiff was paid for the six weeks he was out of work for his surgery and recovery. (Doc. 32-1 at 168-69.)

assertion on the deposition of Richard Shea, defendant's vice president. (*Id*.) However, Shea's deposition testimony is equivocal:

> Q. . . . How many employees do you typically keep in the Birmingham area?
>
> A. How big a radius do you call Birmingham area?
>
> Q. . . . Let's say seventy-five miles.
>
> A. Okay. Well, our main office, we typically have around – I'm going to say around twenty, eighteen to twenty.
>
> Q. Right
>
> A. And our equipment yard, typically, about, say, twenty-five to thirty-five. It depends on the –
>
> Q. Right.
>
> A. – again, what our workload is.
>
> Q. Right. So, is it safe to say that you typically have right around that fifty mark or maybe a little more in the seventy-five-mile radius –
>
> A. Yeah.
>
> Q. – around Birmingham?
>
> . . .
>
> A. It's very seldom that we actually have work in the Birmingham area, you know, field work.
>
> Q. Right.
>
> A. But, we have, you know, permanent people at our yard and in our main office, and then, the jobs just kind of come and go.

(Doc. 30-5 at 76-78.) However, in his Declaration submitted in support of defendant's Motion for Summary Judgment, Shea was more specific; he testified:

> 3. During my deposition on May 12, 2014, I was asked some questions about the number of employees who work Morris-Shea's corporate office in Irondale, Alabama and at the company's equipment yard in Wilsonville, Alabama. In response to the general questions, I made some general estimates of numbers which, as I stated, may vary depending on our company's workload. I was not asked to identify the number of employees who worked in those locations on any particular date or [time frame]. I would not be able to accurately state an exact number of employees working in those locations at any particular date or [time frame]. I certainly don't know how many employees were working at the corporate office or at the equipment yard in August 2011 when Stan Reaves told me he would be having surgery and needed time off from work to recover.
>
> 4. During my deposition, I was not provided any company records which would provide an accurate list of the employees working at those locations on a specific date or [time frame]. Since my deposition, I have reviewed information from our company's computer system listing the employees who were working in the corporate office and the equipment yard in the [time frame] of August 13, 2011 to August 16, 2011. I understand a printout of the information I reviewed was labeled "MSB000453-000457" and provided to Stan Reaves'[s] attorney. These records confirmed my general comments by showing there were *17 employees assigned to and working in the corporate office* and *24 employees assigned to and working at the equipment yard* in that time period.

(Doc. 32-5 ¶¶ 3-4 [emphasis added].)

In his surreply, plaintiff contends that additional employees, including superintendents and foremen, should be added to the total number of employees whose worksite in the corporate office. (Doc. 44-1 at 2-3.) However, plaintiff has not presented any evidence of how many additional employees should be added.

8

**B. DISCUSSION**

Defendant contends that plaintiff's claims are due to be dismissed because plaintiff is not an "eligible employee" covered by the FMLA.

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for certain qualifying reasons.  29 U.S.C. § 2612(a)(1).  The FMLA defines "eligible employee" as:

> an employee who has been employed –
>
> > (i)  for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> >
> > (ii)  for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).  However, "[t]he term 'eligible employee' does not include . . . (ii) any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."  *Id*. (B)(ii).

> As part of the balance that was struck between the interests of employers and the interests of employees, Congress included a small employer exception that excludes from the Act's coverage employers with fewer than 50 employees. [29 U.S.C.] § 2611(4)(A)(i).  A separate exception was granted for small operations – that is, a potentially large company with a relatively small satellite office in a particular area.  Specifically, the statute excludes from coverage any employee whose employer employs less than 50 employees within 75 miles of that employee's "worksite" ("the 50/75 provision").  *Id*. § 2611(2)(B)(ii).  According to the House Committee Report, the 50/75 provision "recognizes the difficulties an employer may have in reassigning workers to geographically separate facilities."  H.R. Rep. No. 102-135(I), at 37 (1991).

*Harbert v. Healthcare Services Group, Inc.*, 391 F.3d 1140, 1147-48 (10th Cir. 2004).

The regulations provide, "An employee's worksite under FMLA will ordinarily be the site the employee reports to or, if none, from which the employee's work is assigned." 29 C.F.R. § 825.111(a). "For employees with *no fixed worksite*, e.g., construction workers, transportation workers . . . , salespersons, etc., [1] *the worksite is the site to which they are assigned as their home base*, [2] *from which their work is assigned*, or [3] *to which they report*." *Id.* (a)(2).[5] The parties disagree as to whether plaintiff's worksite is the area of the three job sites in Louisiana or the corporate office in Alabama. Defendant contends that plaintiff's worksite was the Louisiana worksite at which he was working in August 2011. (Doc. 35 at 23-24.) Plaintiff contends that his worksite was the Irondale office because he was a foreman, he had previously been sent to other worksites and paid a per diem, and often

---

[5]As an example, the regulations state:

> For example, if a construction company headquartered in New Jersey opened a construction site in Ohio, and set up a mobile trailer on the construction site as the company's on-site office, the construction site in Ohio would be the worksite for any employees hired locally who report to the mobile trailer/company office daily for work assignments, etc. If that construction company also sent personnel such as job superintendents, foremen, engineers, an office manager, etc., from New Jersey to the job site in Ohio, those workers sent from New Jersey continue to have the headquarters in New Jersey as their worksite. The workers who have New Jersey as their worksite would not be counted in determining eligibility of employees whose home base is the Ohio worksite, but would be counted in determining eligibility of employees whose home base is New Jersey.

29 C.F.R. § 825.111(a)(2).

went by the Irondale office and talked to Richard Shea.[6] (Doc. 41 at 7-9.) The court finds that plaintiff's worksite was Louisiana.

The record evidence shows, without any meaningful dispute, that all work performed by plaintiff between December 2010, when he was hired to work on the Louisiana job sites, and August 16, 2011, when he told Richard Shea he needed to take leave, was performed in the area of the three job sites in Louisiana. (*See* doc. 32-1 at 129-33, 140-48.) Given the purpose of the 50/75 rule and the facts that plaintiff reported to work at the job sites in Louisiana, that he received his job assignments from Dubberly at the job sites in Louisiana, and, that, at the end of the work day, he returned to his camper within 20 miles of the job sites in Louisiana, the court finds that plaintiff's worksite was the area of the three job sites on the New Orleans flood wall. Specifically, the court notes that plaintiff's work as a foreman and a pile-driver would not be covered by a corporate-office employee or an employee of the equipment yard. Rather, to cover defendant's work during the time he would be on medical leave, defendant would have to find someone to perform the work in Louisiana. As such, the court finds that plaintiff's worksite is the field – in this case, the area of the three jobs on the New Orleans flood wall – and not the corporate office.

---

[6]Plaintiff argues, "even more telling is that [Richard Shea] testified that since becoming a foreman in 2001, Reaves would constantly . . . 'pop in and ask me if I had a minute to talk.'" (Doc. 41 at 8 [quoting doc. 30-5 at 68].) However, these "constant" visits to the corporate office were not part of plaintiff's job duties and were more often about plaintiff's requests for raises. (*See* doc. 30-5 at 68-69.)

The undisputed evidence shows that defendant had 25-26 employees working on the three projects in Louisiana at the time plaintiff requested FMLA leave. Because defendant did not employ more than 50 employees within 75 miles of the Louisiana job sites, plaintiff is not an eligible employee. Therefore, defendant's Motion for Summary Judgment, (doc. 32), will be granted and plaintiff's FMLA claims will be dismissed.

## C. CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment, (doc. 32), will be entered contemporaneously with this Memorandum Opinion.

## III. MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Docs. 29 and 36)

Because the court finds that plaintiff was not an eligible employee under the FMLA, his claims are due to be dismissed. Therefore, plaintiff's Motion for Partial Summary Judgment, (doc. 29), and defendant's Motion for Partial Summary Judgment on the Scope of Backpay Period, (doc. 36), will be denied as moot.

An Order denying as moot the Motions for Partial Summary, (docs. 29 and 36), will be entered contemporaneously with this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting

defendant's Motion for Summary Judgment, (doc. 32), and denying as moot the Motions for Partial Summary Judgment, (docs. 29 and 36), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 23rd day of March, 2015.

_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE